IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GWENDOLYN J. BENTON            :

    v.                         :   Civil Action No. DKC 12-1577

PRINCE GEORGE'S COMMUNITY
COLLEGE                        :

**MEMORANDUM OPINION**

Presently pending and ready for review in this discrimination case is the motion for summary judgment filed by Defendant Prince George's Community College ("PGCC") (ECF No. 17). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I.  Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

In 2000, Plaintiff incurred an injury which required her ankle to be fused. She also suffers from a herniated disc and arthritis in both knees. (ECF No. 17-2, at 8-9, deposition of Plaintiff). On account of her physical condition, Plaintiff is unable to walk without aid or assistance and must wear tennis

shoes or diabetic shoes. (*Id.* at 26-27; ECF No. 10, at 2, Plaintiff's amended complaint).

Plaintiff has been a periodic student at PGCC since the early 1980s. (ECF No. 17-2, at 6). She was enrolled at PGCC from approximately 2005-2006 and again in the 2011-2012 school year. (ECF No. 10, at 2).[1] During the 2005-2006 period, Plaintiff took two classes at PGCC. At that time, PGCC's campus was undergoing construction, which resulted in one of Plaintiff's classes being relocated to a temporary building. The temporary building was not near parking and required a mile-long walk to the bathroom. Additionally, Plaintiff's other class was held at the other end of campus. (ECF No. 17-2, at 15). Plaintiff approached Thomas Mays of PGCC's Disability Support Services and requested that both her classes be held in the same building. (*Id.*). Defendant did not provide the accommodation, despite Plaintiff's repeated requests. (ECF No. 10, at 2). According to Plaintiff, she "was placed on financial and academic probation as a result of her inability to participate fully," (*id.*), and ended up withdrawing from PGCC some time later. (ECF No. 17-2, at 15).

Plaintiff enrolled again in August 2011, and in the spring semester took SPH 1010: Introduction to Speech Communication taught by Professor Ennis Allen. The class was taught partly

---

[1] It is unknown whether Plaintiff is still enrolled at PGCC.

online, partly in-class. Professor Allen had a policy that students were to "dress professionally" for classroom sessions. The class syllabus provided that, "[n]o hats, jeans, tennis shoes, sweats, work uniforms, military uniforms, etc. will be acceptable." (ECF No. 17-6, at 5, syllabus for SPH 1010). Students were advised that failure to dress professionally would result in a reduced grade. (*Id.*).

Owing to her disability, Plaintiff told Professor Allen that she needed to wear tennis shoes and requested an accommodation. (ECF No. 10 at 2). Plaintiff alleges that Professor Allen remarked that "[i]f I do it for you, I'll have to do it for everybody," and that Professor Allen privately told Plaintiff that "[f]rom the first day you've caused a problem." (ECF No. 17-2, at 28). Plaintiff contends that her grade was lowered as a result of her wearing tennis shoes, which contravened the class dress code. (ECF No. 10, at 2).

After the initial exchange between Professor Allen and Plaintiff, Professor Allen received an email from Mr. Mays, informing her that Plaintiff has a documented disability, needs to wear orthopedic shoes, does not wish to be penalized for inappropriate dress, and requests that her grade be adjusted accordingly. (ECF No. 17-5). Professor Allen responded to Mr. Mays, acknowledged Plaintiff's disability, and found the requested accommodation reasonable. (*Id.*). In her declaration,

3

Professor Allen stated that she adjusted Plaintiff's grade on her first speech to an 80 out of 100. (ECF No. 17-4). This adjusted score is reflected in Plaintiff's itemized final grade sheet. (*See* ECF No. 17-11). Professor Allen declared that no further deductions were made to Plaintiff's grade on account of her footwear. (ECF No. 17-4).

Beyond this initial incident, Plaintiff lodged numerous complaints with PGCC administration regarding Professor Allen over the course of the spring 2012 semester. Defendant provided correspondence from Plaintiff to Dr. Charlene Dukes, President of PGCC, and to Professor Tammy O'Donnell, head of Professor Allen's department. In that correspondence, Plaintiff stated that Professor Allen was running her class as if it were the U.S. military and was exhibiting no compassion for her students and the unexpected developments that occur in their lives. Specifically, Plaintiff unexpectedly had to spend time with her ill husband at the hospital, causing her not to be prepared fully for her class presentation. (*See* ECF No. 17-8, email from Plaintiff to Tammy O'Donnell; ECF No. 17-9, letter from Plaintiff to Charlene Dukes). While not stated in either correspondence, one can infer that Plaintiff felt that Professor Allen did not accommodate her unexpected situation. Professor O'Donnell responded to Plaintiff, informed her that if she wanted to lodge a complaint against Professor Allen she would be

welcome to use the student complaint process, but that Professor Allen has accommodated Plaintiff's disability and that Plaintiff had ample time to complete her assignments even with her husband's sudden illness. (ECF No. 17-13, email from Tammy O'Donnell to Plaintiff).

Plaintiff alleges that Defendant denied her repeated requests for an accommodation, even after she provided documentation of her disability. She alleges that Defendant lowered her grade to a "D" "because of her persistent requests and attempts to wear tennis shoes." (ECF No. 10, at 3).

On July 27, 2012, Plaintiff filed a *pro se* amended complaint in this court. (ECF No. 10). Plaintiff contends that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* the Rehabilitation Act, 29 U.S.C. § 701 *et seq.;* and the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 1981 *et seq.* Following discovery, Defendant moved for summary judgment on February 19, 2013. (ECF No. 17). In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the clerk of the court mailed a letter to Plaintiff on February 19, 2013, notifying her that a dispositive motion had been filed and that she was entitled to file opposition material or risk entry of judgment against her. (ECF No. 18). Plaintiff did not respond to Defendant's motion.

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex,* 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(c) when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993)

(*quoting Felty v. Graves–Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

Plaintiff has alleged "unlawful discrimination by Defendant pursuant to the American[s] with Disabilities Act (1990), the Rehabilitation Act (1973)[,] and the Civil Rights Act of 1964 and 1991." (ECF No. 10). Plaintiff supports these claims with two factual allegations. The first occurred in 2005 and 2006, while Plaintiff was enrolled at PGCC. The second episode occurred in the spring of 2012, when Plaintiff again was a PGCC student. Defendant avers that Plaintiff's claims prior to May 25, 2009 are barred by the statute of limitations for the respective claims. (ECF No. 17, at 9). For the reasons that follow, the court agrees that the claims arising from the factual allegations of 2005 and 2006 should be dismissed.

The Americans with Disabilities Act, Rehabilitation Act, the Civil Rights Act of 1964, and the Civil Rights Act of 1991 all fail to specify a limitation period. Because of this, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011), *cert. denied*, 132 S.Ct. 1960 (2012). "Maryland courts apply the three-year limitations period governing general civil actions to ADA and Rehabilitation Act claims." *Jeandron v. Bd.*

*of Regents of Univ. Sys. Of Md.*, 510 F.App'x 223, 226 (4th Cir. 2013) (citations omitted); *see also Speciner v. NationsBank, N.A.*, 215 F.Supp.2d 622, 634 (D.Md. 2008) (determining that "the three year limitations period applicable to state law civil actions is the most appropriate in the context of an ADA civil rights claim"); *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 251 (D.Md. 2004) (holding that "the statute of limitations for Rehabilitation Act claims in Maryland is three years").

The timeliness of claims under the Civil Rights Acts is determined by whether the plaintiff's claim arises under a statute enacted before or after December 1, 1990. This date is significant because "Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004); *see also* 28 U.S.C. § 1658. The Supreme Court has concluded that "a cause of action aris[es] under an Act of Congress enacted after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *R.R. Donnelley & Sons Co.*, 541 U.S. at 382 (alteration in original) (internal quotation marks omitted). In the instant case, if Plaintiff's claim falls under a provision contained in the Civil Rights Act of 1991,

9

then a four year statute of limitations period would apply.  If Plaintiff's claim falls under the Civil Rights Act of 1964, then a three year statute of limitations period would apply.  *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (providing that claims under 42 U.S.C. §§ 1983, 1985, and Title VI "borrow the state's general personal injury limitations period, which in Maryland is three years"). Plaintiff has not stated the provision of the Civil Rights Act under which she brings her claim, but regardless of the provision, the factual allegations from 2005 and 2006 fall outside of either the three year statute of limitations for the Civil Rights Act of 1964 or the four year statute of limitations for the Civil Rights Act of 1991, as Plaintiff's complaint was filed on May 25, 2012.  Therefore, the incidents alleged in 2005 and 2006 are barred as a matter of law.

For the spring 2012 incidents, Plaintiff alleges Defendant engaged in discrimination in violation of four federal laws: "the American[s] with Disabilities Act (1990), the Rehabilitation Act (1973) and the Civil Rights Act of 1964 and 1991."  (ECF No. 10).

Giving *pro se* Plaintiff's complaint a liberal reading, she appears to be claiming that Defendant discriminated against her based on two protected categories: age and disability.  In terms of her age discrimination claim, Plaintiff seems to be claiming

that Defendant's discriminatory acts violated the Civil Rights Acts of 1964 and 1991. But the laws Plaintiff cites in her complaint do not prohibit age discrimination. The closest possibility is Title VI of the Civil Rights Act of 1964, but that only prohibits discrimination on the grounds of race, color, or national origin. 42 U.S.C. § 2000d. Therefore, Plaintiff has not stated a valid age discrimination claim.[2]

Plaintiff also claims discrimination based on her disability in violation of "the American[s] with Disabilities Act (1990) [and] the Rehabilitation Act (1973)." (ECF No. 10). Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination

---

[2] Even if Plaintiff properly brought a claim for age discrimination under the Age Discrimination Act, 42 U.S.C. § 6101 *et seq.*, Defendant's motion for summary judgment would be granted as to this claim. Plaintiff has provided no evidence of age discrimination necessary to respond to a motion for summary judgment. *See Celotex*, 477 U.S. at 322-23.

11

under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Generally, under either statute, a plaintiff must allege that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Plaintiff claims that, despite multiple efforts, her requested accommodation to wear tennis shoes without penalty was not granted and that her grade was lowered to a "D" because she wore tennis shoes. (*See* ECF No. 10, at 2-3). Assuming, for the sake of argument, that Plaintiff has provided sufficient evidence to show that she has a disability, and is otherwise qualified to be a student at PGCC, she has submitted no evidence to suggest that PGCC discriminated against her on the basis of disability. Plaintiff's one claim of denied benefits is the lower grade she received because of her need to wear tennis shoes in violation of the class requirement that students "dress professionally." Plaintiff has provided no evidence to support this claim, and Defendant has provided evidence to the contrary. Specifically, Professor Allen's declaration that she reinstated points deducted from Plaintiff's grade after Mr. Mays told her

12

that Plaintiff was allowed to wear tennis shoes. (ECF No. 17-4 ¶ 5). Plaintiff's itemized final grade sheet confirms this point. (*See* ECF No. 17-11). Professor Allen explained that "Plaintiff's grade for the class was a result of her performance on numerous quizzes and the Final Exam, all of which were multiple choice and True and False questions." (ECF No. 17-4 ¶ 8). Performance on such examinations is wholly independent from Plaintiff's disability. Plaintiff has not responded to these arguments. In sum, the record does not indicate that Plaintiff was denied any benefits because of her disability. Accordingly, summary judgment for the Defendant is proper.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant PGCC will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge